Alright, the next case we're going to hear is M. L. v. Smith and Mr. Ike, whenever you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court, I am Michael Ike, counsel for M. L., the minor plaintiff in this matter, and his parents. Under the Individuals with Disabilities Education Improvement Act, the IDA, all educationally disabled students in the United States have the right to a free and appropriate public education that emphasizes special education-related services designed to meet their unique needs and prepare them for further education, employment, and independent living. That is from the preamble to the act. The minor appellant here, M. L., is one of those students. He has Down syndrome and a number of other related disabilities that significantly impair his ability to learn. It is undisputed that he requires an intensive special education program, small student-teacher ratios, and a very high degree of consistent repetition of instruction and reinforcement to make educational progress. However, it is also undisputed that provided these critical components of an Individuals with Disabilities Education Improvement Act, M. L. certainly can and has worked. M. L. also is an Orthodox Jew. His father is a rabbi, and his entire family observes the teachings and practices of Orthodox Judaism in Montgomery County, Maryland. There is a community of these Orthodox Jews there, as in certainly other places. A principal tenet of that faith and lifestyle is that the responsibility for parents to raise their children as Orthodox Jews. Not surprisingly, and consistent with his parents' beliefs, M. L. very much wants to become a practicing Orthodox Jewish adult, and he will live... Are you requesting that the school provide more than what M. L. could get if he were not disabled? In other words, if he were just an able student. It sounds to me like he would not be able to get what you want. His training and his maintaining of his culture and the Jewish tradition would have to be done through mechanisms of after-school training or evening training or breaks during the day or whatever. It sounds to me like because he's disabled, you're asking for more in this aspect than you might otherwise be entitled. And that's one observation the district court made. I'm just wondering how you respond to that. I respond to it in two ways. When I stepped over your question, I apologized and said no. Actually, it's no and yes. We are asking that he only have what any other educationally disabled student has a right to, which is access to the school's curriculum, the public school's curriculum. Now, in that regard, he has no right to anything other than a non-disabled student. However, because he falls under the IDEA, he has a right to an individualized education program, of course, which takes into account, as the preamble says, education that's going to prepare him for further education, employment, and independent living. Now, that should be subsumed in the general curriculum, of course, but it is specifically set forth in the IDEA. And because of that, the public schools has created a curriculum for students such as ML, who are never going to qualify for a diploma, for example. What they get is something called a certificate of completion. Well, what principle, if we were to decide in your favor, what principle would you say we would articulate to determine for future cases what's the rule of law here? Because I assume that you would not contend that because of Orthodox Judaism, that that's unique. So how would you articulate it? What boundary would there be? Because it seems like, to me, it could be almost limitless. Your Honor, it could be without limits. And, of course, we are arguing that it should be only consistent with the IDEA. And let me first say that certainly, in response to both of Your Honor's questions, the great majority of educationally disabled Orthodox Jews of any population would not need what we're arguing ML needs in order to meet his individual needs because they can get their education. What he needs is individualized attention because of his disability. But in that regard, the question is whether he's entitled to more than what any other Orthodox Jewish child attending the public school gets. And it seems to me if we got ML to the same position that we'd get any other Orthodox Jewish child, we'd give him a free public education which has all those goals in mind. But we couldn't teach him Judaism. We couldn't teach him Hebrew, I don't think, in the public schools require that. We couldn't go through ceremonial rites during the day. I mean, if it was a Muslim to pray at noon or whatever, it seems to me we could accommodate and let him do that. But what I'm sensing is that if the school were required to go to the extent that you're claiming, we would be, I don't know, we wouldn't be able to do that. I think we're really going quite far in integrating religious practices into the public school system when we've normally left that for the student and the parents to take care of. And maybe the school system itself can't take care of it because the cultural needs are so comprehensive. And I gather with respect to this family, the children are in the Hebrew schools as opposed to the public schools. They are. They are. Yes, Your Honor. Although ML started out in Montgomery County Public Schools. Yeah. Yeah. I mean, do you get my question? Yes, I do. It sounds to me like what they design takes care of all the secular subjects, the attention, they have a specific list of things they want to accomplish in terms of math and things. It's all in the record. But I don't quite understand what's demanded further other than religious practices. Okay, Your Honor. What both the due process hearing officer, the administrative law judge, and the district court did not have in front of it that Your Honors now have access to because we found it, is the fundamental life skills curriculum. That's the exhibit to our, the attachment to our reply brief. It is a curriculum that is in the record found to be ML's curriculum. It just never, we didn't have the substance. The substance says that ML, in order to become a functional adult, and this is all we want for any student in Montgomery County Public Schools, has to learn in the community, has to learn in, has to learn along with his parental input. This is the school system's own curriculum saying this, and what the end of the curriculum guide that we put in there says is the curriculum encourages that properly implemented community-based instruction will make the difference for our students between a rich, meaningful, and fulfilling life and an adulthood of isolation, boredom, and purposelessness. That's on page 38 of our attachment. Your Honor, if they teach ML in the approved program thus far to read and do math and do some writing, he will not be able to function in the society that we know he's going to live in. He will not know the customs, and I'd be happy to address the difference between the religious and the lay part of it, but he will not be prepared to live the way that this curriculum says he should be able to live. Is this properly in the record? Yes, Your Honor. It didn't come in until on appeal in reply brief, and it wasn't available to the district court? It was not available to the district court, nor was it available to the administrative law judge, Your Honor. It was available to ALJ or the district court, and here it didn't come in until the reply brief. The reason it didn't come in is I think... We normally look at what the district court has. We're a review court. I fully understand that, Your Honor, and we certainly understand that one possible, although we haven't asked for it, is to request a remand, so this can be considered... Did you ask for leave under Rule 10 to supplement the record? We requested an appellee, so they had any opposition, and they had none. So you didn't request a court. I think it's Rule 10D or something. You can supplement the record. Yes. Appeal is stuff that wasn't in the record below. I understand, and Your Honor... You get the approval of the Court of Appeal. I believe, and I'm not sure that we did, so I don't want to answer that one wrong, but the court can also take judicial notice. I understand that the Court of Appeals can take judicial notice under the federal rules of evidence as well as... Well, sure we can. I mean, once again, but it was not before. It was talked about. It was found to be the curriculum that ML was being proposed to be educated under with Montgomery County Schools, and we did ask... But it's normally not fair for the Court of Appeals to be looking at things that the district court didn't have the benefit of. It's sort of mousetrapping the district court. But I'm not sure what we, as the petitioners in this, could have done. We made a FERPA request the week after we filed our due process hearing request, which is for all educational records, and at the dispute resolution portion of this matter, which is in the statute, it's an attempt to finally try to resolve it before hearing, we posed specific questions about each of these items about keeping kosher and how to dress and asking how they proposed to teach ML these things. The school system declined to answer those questions. If we rule in your favor, then have another child, exact same level of disability, who's from a Muslim community, Shia or Shiite or Amish or Mormon, pick any number, then that would obligate that school district to provide a culture, religious-specific education for that child. Which would then be different from the one that your client would receive because he's... No. Wouldn't that be the upshot of... No, I don't believe so. Why not? Because ML represents a very, very small percentage of the children that are found to be educationally disabled. We were just assuming that you would have children who would be... With this condition, yes. ...other faiths or other cultures. We have to establish a principle. We just can't say, well, it works for this case and that one. Yes, Your Honor, and yes, under that hypothetical, the answer is yes. Because that child, and once again, there aren't many of them, but that child, the only way that we're going to be able to educate that girl... I think you said... This was... Oh, it wasn't she. You said she. I heard she. ...that child to be functioning as good as that child can be adult is by taking into account what we have to prepare that child for his or her adulthood. The district court said... Your Honor, there's probably something more fundamental issue here. The whole idea of IDEA, I-D-E-A, is to provide a free public education for people who are disabled, with an idea that we're only going to go so far as any educational system undertakes to educate the public. And it seems to me you're requesting things far beyond the goals of any free education system in the secular community. I don't believe so, Your Honor. I mean, let's take a group of three Orthodox Jewish children who are not disabled, and they want to go to the Montgomery County Public Schools. They're only going to be given the sports, the courses that are offered there, the language, and the curriculum that has been designed for the school consistent with the norms for society and the Constitution. Yes. And it seems to me that's the goal, is to get the disabled into that same mainstream where they would enjoy what we give everybody in a free public education. Now, what I think you're asking for is something quite special, which would be to replace the Hebrew school in the public school. You want all the benefits that you get from the Hebrew school or a parochial school of any kind provided by the public school. And that extends the definition or the notion of a free public education way beyond what I think statute was intended to provide or what the notion of free public education is. If I may, Your Honor, I don't believe so. If we take a child in the fundamental life skills curriculum who is not an Orthodox Jew, the reason that child is in the fundamental life skills curriculum, as the court can see from reading the portions that we've now provided to the court, is because those children have to get to an alternate learning outcome. Those are the words in the curriculum. And they have to be trained in the community that they're going to live in and to learn how to shop and to learn how to make change and to learn what's good to eat and what's not good to eat. They've got to keep doing it over and over again because a lot of them don't learn without that kind of repetition. That's all we're asking for for ML as well. But what we are saying is that in his particular situation, you have to change it a bit because the community he's going to be living in is inconsistent to a large extent. Specifically, what change, major changes, do you need for ML? For ML, we need ML to learn how to eat and shop and greet people in the community he's going to live in, which that means we need goals and objectives in an IEP that deal with this and then a setting, whether it's in the public schools, which is where the parents first ask. Parents, as in Curios Joel, the Supreme Court precedent here, they asked for the public schools to do this. If the public schools can't do it and the public schools said they wouldn't, whether they could or they couldn't, then that's why he's in this private school right now where he's learning that. He needs a special education program that is community-based and that will give him the opportunity to learn to live as an adult in the community. But you're defining community to be a religious community that has religious rules that affect the whole community, whereas the public school system would not define a community as a particular religious sect or a particular neighborhood or a particular custom and practice. They would be defining community as the community about the school, wouldn't they? Yes, but to that extent, this case isn't about religion, Your Honor. It's very much about religion because all the demands come from the recognition and the practice of orthodox Judaism. I appreciate that, actually, but I'm just wondering how that gets carried out by a public school system. Your Honor, if I may, ML's father testified at the hearing and we cite what I'm about to talk about in our brief, so I won't try to find the joint appendix site right now. But what he talks about is, yes, the orthodox Jewish community is certainly based upon orthodox Judaism. It's a faith-based world. That's clear. However, what he said is that his son is only going to learn so much about the faith because that's what he's able to do. And what's more important to him, what's most important, is that he fit in in the world that he's going to live. And that's exactly what that fundamental life skills curriculum targets as well, and that is the general education curriculum. But that faith, again, is defined by all the religious practices, the practices defined, required, or practiced by an orthodox Jewish community. And it seems to me that if you go back, and we don't need to get into the substance of Judaism, but if you go back, faith and creation and living and eating were all put together. That's the way we live as human beings in relation to God. And it seems to me that that is very, it's a very good thing to aspire to, but the problem is in the reality of secular society where we have free public schools and we don't have religions practiced in the public schools. We can make accommodation, but I don't know how much further we can go in doing what you're asking for. Then may I make one further, I know my time's up, one further response to that? He has a right to an individualized education program. The Supreme Court certainly has found that the establishment clause permits public money. But you have to understand what that means in the statute. It's not a formula. The individualized attention is because of the disability. Otherwise, he would be mainstreaming and he'd be in the class with 20 other people. Yes, but his curriculum would be different because if he has to... The curriculum has to be designed in relation to his abilities. It has to be in relation, no, according to the act, not just his abilities, but his ability to live independently, which looks towards the future. I'm sorry, Your Honor, I believe you understand my point. Yeah. Thank you very much, Your Honor. Okay, thank you, Mr. Allen. Mr. Crewe? Good afternoon. My name is Jeffrey Crewe. I'm here on behalf of the appellee, Jack R. Smith, in the Montgomery County Public Schools. And I think that three points are very important to make initially, and that is, number one, there is no dispute over the fact that the January 2013 IEP provided to ML is perfectly appropriate to provide him with a free and appropriate public education under the Individuals with Disabilities Education Act and its Maryland State counterpart, but for the fact, as the parents argue, that ML is an Orthodox Jew. Secondly, it didn't really come up in the appellant's argument, but the parents are asking for nothing less than religious instruction within the schoolhouse setting. They're asking for that religious instruction through very specific IEP goals and objectives. What are some of the things that you understand they have requested in addition to what's provided in the plan? Your Honor, it's not just what I understand. This is what the record is very clear, and we cite at pages 7 through 10 of our brief the types of things that they're asking for, and they include, for example, instruction in kashrut, which is Jewish dietary law. They're asking for classes in kosher cooking. They want him instructed on determining how long to wait between consuming milk and meat. They want the public school to teach him how to identify the certification symbols marking kosher foods, the little K that you see with the circle. There are about 1,000 different symbols, and to start distinguishing between one symbol and another gets into issues that rabbis disagree on. They want the school system to teach their son how to identify which kosher symbol applies to him and even within their small community, I would suggest that there are differences as to what is the proper symbol. But they want that taught. They want the school system to teach him how to perform religious rituals, such as reciting prayers before and after meals. They want the school system to teach him how to keep Shabbat, the Sabbath. They want the school system to teach him how to observe religious holidays, how to read from the Torah, and to know which prayers to recite and when to recite them. And in their reply brief, we put this out there. I mean, the record is very clear, but in their reply brief, they don't dispute the fact that this is what they're asking for. All they say at pages 20 and 21 of their reply brief is that some of these goals and objectives are not overtly religious. That's the only response that we have to that. So this is not just what I think they're asking for. This is what the record shows and what they have not contested through their reply brief. And then the third point that I think Your Honor referred to, the school system is responsible for accommodating ML's religious beliefs and that of his parents. There's no dispute in the record that the school system would fully have reasonably accommodated all of his religious beliefs. There's really no dispute on that. Montgomery County has a comprehensive policy on respecting religious diversity that we cite at page 13 of our brief, and there's no question that he would have accommodated. So what the parents are asking for is nothing short of the school system providing religious instruction. We presented witnesses who said we wouldn't know how to begin to provide what they're asking for. We're not rabbis. We're not Jewish scholars, and Jewish scholars would differ as to what would be required. One Jewish child with the same disability, his parents could ask for one set of rules and strictures. Another Jewish child, another set of parents of a Jewish child similarly disabled could ask for a whole different set of rules and strictures to be taught. But this is asking for nothing short, make no mistake, than instruction in Orthodox Judaism in the public school system. And in the hearing below, as Judge Grimm pointed out, the case really wasn't decided on First Amendment grounds. The court did not need to get to that, as did the ALJ not need to get to it. It's a very simple matter of statutory interpretation, and I can't remember if Your Honor actually authored the DL versus Baltimore City Public School case or not, but that was a case under Section 504 where the court said that public schools are only required to make a free and appropriate public education available on equal terms to all eligible students in the district. I believe that that was what Your Honor was referring to in questioning appellant's counsel, and that comes from the interpretation of a free and appropriate public education, as Judge Grimm cited. And Judge Grimm did rely on DL, but you start with the definition of a free and appropriate public education under 20 U.S.C. Section 14.019, which defines a free and appropriate public education as special education and related services provided in conformity with an IEP. Special education under 20 U.S.C. 14.0129 is defined as specially designed instruction at no cost to the parents, so on and so forth. Specially designed instruction under 34 CFR 300.39B3 means adopting the curriculum to ensure access of the child to the general curriculum so that the child can meet the educational standards within the jurisdiction of the public agency that apply to all children. That was the holding of the ALJ and Judge Grimm considered that section. The way that the appellants treated it in their brief was to omit reference to that section. The FAPE has to be in accordance with an IEP. An IEP is defined in 20 U.S.C. Section 14.14D1A2AA as including a statement of measurable annual goals designed to meet a child's needs that result from the child's disability. Not from his religion, but from his disability, as I think you're referring to. To enable the child to be involved in and make progress in the general education curriculum. Well, again, the way that the parents treated that language in their brief was to omit it. I believe that the inescapable conclusion, as was reached by the ALJ and the District Court, really parrots what your Honor just said. Why would ML be entitled to more than any other Jewish child or any other child within the public school system? He's entitled to a free and appropriate public education. The case was and can be resolved strictly as a matter of statutory interpretation. We would simply urge this Court to adopt Judge Grimm's very well-reasoned decision. Beyond that, I can answer any questions. All right. Thank you, Mr. Krug. Mr. Iken. Thank you again, Your Honor. We are not seeking more than what Montgomery County says is its curriculum. I direct you to page 15 of the Fundamental Life Schools curriculum. I'm sorry, page 15 of our reply brief, I thought, which quotes that curriculum. And what it says, this is Montgomery County Public Schools curriculum. Instructional priorities for each student should be based on the real-world needs of the individual students and should lead toward increased independence and autonomy in his or her home and community. If ML doesn't have a right somehow in the public school and the private school to learn how to live in his home and his community, not only does he not get the curriculum that Montgomery County says it provides to all Fundamental Life School students, but he's... Would they have to, under your proposal, have to help ML identify kosher food? Not help him. They would have to teach him how to recognize it. It would be instruction, yes. Who would provide that instruction? Teachers. Special ed teachers. It could be special ed teachers. In fact, there's testimony that two of his teachers at SUAM, which is the special education program that he's in, that teach him some of these things, aren't even Jewish. I mean, there's so much of this, when we just say it's religious, it is religious-based. Of course it is. Yes. Of course it is, Your Honor. But that doesn't mean that a teacher, to train how to recognize different kosher cereals, and Mr. Cruz is right, there apparently are a whole lot of them. The foods and the specific prayers and the practices, I most highly respect all of that. I think it's probably one of the most aspirational things we can do, especially in a society where we're becoming more and more indifferent to values and value systems. It's just very, very important, and the parents, I know, want that. But the question is, we have a community in which they're very interested, which carries out the practices, the traditional practices and the faith and the scripture. And then we have a secular society which provides free public education to everybody on an equal basis. And the idea is, IDEA is enacted against the latter, a free and appropriate public education. And we don't teach people in class the Lord's Prayer, the appropriate prayer, Jewish prayer or the Muslim prayer. And we don't engage in interpretations of scripture. And it would be nice, I think, for everybody to have it. I really do. But it's almost impossible to do it, so that we have this secular setup. But, Your Honor, we have an Individuals with Disabilities Education Act. But it doesn't go across that line. It focuses in terms of trying to mimic a free public education with respect to a person who has a disability. The idea of the whole program is to get the person with a disability into the same posture as every other student. And the question is, I don't think Montgomery County provides the types of services that you're requesting to Orthodox Jewish children or to Catholic children. They don't, Your Honor. However, if the only way this student, and once again, there aren't many of him, but if the only way this student is going to learn those things because of his disability is to have constant... What are those things? I mean, he can learn the curriculum of the public school system. He can't learn the curriculum of his religion. If that is going to be, we'll call it the curriculum of his religion, if learning how to bake kosher or how to dress and to wear a yarmulke and tzitzit, these things are what he has to learn in order to live in his community as an adult. Will he learn that from his parents? Will he learn it at home? No, he will not, Your Honor. The evidence is crystal clear in this case that he will be confused if he goes to the public school and learns one thing. He's going to have to unlearn that, which he is not capable of doing, and then learn... That's why I say the great majority of Orthodox Jews certainly can do that, Your Honor. ML can't do that. If he's not going to get that repetitive, all-the-time instruction, he's not going to learn to be what he wants to be and what his family wants him to be. And he's not going to even be prepared to be in the society that he's being educated for. He won't have... In the name of individuality, we will be denying his individual rights. Thank you, Your Honor. Thank you very much. All right. We'll adjourn court until tomorrow morning and come down and greet counsel.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee